J-S70008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| AARON JOSHUA BOHN | : | |
| | : | |
| Appellant | : | No. 453 MDA 2017 |

Appeal from the Judgment of Sentence February 13, 2017
In the Court of Common Pleas of Mifflin County
Criminal Division at No(s): CP-44-CR-0000719-2015

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED NOVEMBER 28, 2017**

Appellant, Aaron Joshua Bohn, appeals from the judgment of sentence entered in the Mifflin County Court of Common Pleas, following his jury trial conviction for endangering the welfare of a child ("EWOC").[1] We affirm.

In its opinion filed February 6, 2017, the trial court correctly set forth the relevant facts of this case as follows:

> On November 23, 2015, [Appellant] was charged with knowingly endangering the welfare of a child by violating a duty of care, protection, or support. Specifically, it was alleged that [Appellant] did permit his daughter [("Child")], age eleven, to be in close proximity to dangerous and venomous snakes that were housed in containers which had either unsecured lids or no lids at all and…[C]hild's bedroom was directly beside the room which held the snakes, in violation of Section 4304(a)(1) of the

_____

[1] 18 Pa.C.S.A. § 4304(a)(1).

PA Crimes Code. These venomous snakes were owned by [Appellant's] brother and co-[d]efendant…who also lived at the residence.[2] [Appellant] was found guilty of [EWOC] on November 14, 2016. [Appellant] subsequently filed a Motion for Post-Trial Relief, Motion for Acquittal, and/or Motion for New Trial.

(Opinion in Support of Order Denying Post-Trial Motion, filed February 6, 2017, at 1).

The court held a hearing on Appellant's post-trial motion on December 16, 2016, and denied relief on February 6, 2017. The court sentenced Appellant on February 13, 2017, to fifteen (15) to thirty (30) months' imprisonment. Appellant timely filed a notice of appeal on March 10, 2017. On March 30, 2017, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on April 11, 2017.

Appellant raises four issues for our review:

> DID THE TRIAL COURT ERR IN RULING THE COMMONWEALTH HAD COMPLIED WITH APPELLANT'S REQUEST FOR DISCOVERY WHEN IT FAILED TO PROVIDE APPELLANT WITH SIGNIFICANT RELEVANT CYS DOCUMENTS—IN PARTICULAR DOCUMENTATION OF 2012 AND 2015 CYS HOME VISITS AND A LETTER FROM CYS RELATIVE TO THE AUGUST 2015 HOME VISIT—DESPITE HIS FORMAL REQUEST?
>
> SHOULD THE TRIAL COURT HAVE GRANTED APPELLANT A

---

[2] Appellant, Child, Appellant's brother, and Appellant's mother lived together in Appellant's mother's home. The Commonwealth charged Appellant, Appellant's brother, and Appellant's mother with crimes related to exposure of Child to snakes in the home.

NEW TRIAL BECAUSE THE COMMONWEALTH COMMITTED A **BRADY**[3] VIOLATION RELATIVE TO THE CYS MATERIALS DESCRIBED ABOVE WHICH WERE NOT PROVIDED TO APPELLANT DESPITE HIS REQUEST FOR SAME.

SHOULD THE TRIAL COURT HAVE ORDERED A CONTINUANCE SO THAT THE COMMONWEALTH COULD FULLY EXPLORE CYS RECORDS TO SEE WHETHER IT HAD COMPLIED WITH APPELLANT'S DISCOVERY REQUEST AND PROVIDE [APPELLANT] WITH THE OPPORTUNITY TO REVIEW THOSE MATERIALS IN ORDER TO PROPERLY MOUNT A DEFENSE?

WAS THERE INSUFFICIENT EVIDENCE TO CONVICT APPELLANT OF ENDANGERING THE WELFARE OF A CHILD SINCE THERE WAS NO EVIDENCE THAT THE NON-NATIVE SNAKES WERE ACTUALLY THE VENOMOUS SPECIES ALLEGED, NOR THAT HE KNOWINGLY ENDANGERED HIS CHILD; VIOLATED ANY DUTY OF CARE, PROTECTION OR SUPPORT; OR OTHERWISE HAD THE REQUISITE *MENS REA* TO COMMIT THIS CRIME.

(Appellant's Brief at 1-3) (internal footnote omitted).[4]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Aaron L. Gingrich, we conclude Appellant's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions

---

[3] **Brady v. Maryland**, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

[4] Appellant raises six issues in his statement of questions presented. Nevertheless, issues two and three are identical to issue one, so we do not reproduce the duplicative issues here. For purposes of disposition, we have also reordered Appellant's issues. Further, Appellant's argument section contains only two subsections, in violation of Pa.R.A.P. 2119(a) (stating argument shall be divided into as many parts as there are questions to be argued). We will overlook this defect.

presented. (*See* Opinion in Support of Order Denying Post-Trial Motion at 1-6; Trial Court Opinion, filed May 1, 2017, at 1-4) (finding: **(issues 1-2)** Appellant's ***Brady*** claim is premised upon his discovery of letter from Children and Youth Services ("CYS") dated August 4, 2015, indicating CYS had previously investigated Appellant's brother as to welfare of another child and ultimately closed that case; Appellant contends this letter contains potentially exculpatory evidence relating to his case and Commonwealth's failure to discover existence of and disclose letter constitutes ***Brady*** violation; although CYS maintained on morning of trial that it had disclosed all relevant files, Appellant produced at post-trial motion hearing copy of CYS' letter; significantly, however, CYS is not law enforcement agency or actively involved in prosecution of Appellant; consequently, Commonwealth did not have duty to discover and disclose evidence in CYS' possession; even if Commonwealth had duty to discover and disclose this letter, it was not material to Appellant's guilt or innocence, where letter refers to different child and involves Appellant's brother—not Appellant;[5] court does not know what conditions prompted CYS to close case involving Appellant's brother;

---

[5] Significantly, the letter does not mention snakes or otherwise indicate the basis for the case involving Appellant's brother. The letter merely states, "It is the decision of this agency to close your case as of 8/4/15" and directs Appellant's brother with how to proceed if he disagrees with the agency's decision. The trial court also states the case number associated with CYS' letter referenced a different residence than Appellant's residence. We are unable to verify that assertion on the record before us.

materiality of letter is speculative at best and insufficient to satisfy **Brady** claim;[6] additionally, Commonwealth has routine policy of expunging CYS records which are deemed invalid within one year and 120 days of referral; Commonwealth did not violate Appellant's due process rights by unknowingly permitting CYS to expunge records related to Appellant's brother as part of its routine procedures; further, letter at issue was in Appellant's or his brother's possession prior to trial; Appellant's knowledge of letter and ability to produce copy of it shortly after his trial shows Appellant could have discovered letter sooner with exercise of reasonable diligence;[7]

**(issue 3)** on morning of Appellant's trial, Appellant filed motion to compel discovery of all CYS' records and home visits involving Child, Appellant,

_____

[6] In his brief, Appellant argues the Commonwealth "stipulated to" and made the "startling admission" that CYS visited the home in 2015, and approved Appellant's brother's possession of the snakes at that time. (Appellant's Brief at 45). Appellant completely misstates the record. At the post-trial motion hearing, the prosecutor stated: "**[W]hile I'm not conceding it**, I'm going to give you the argument…that [Appellant's brother] was cleared…by CYS." (N.T. Post-Trial Motion Hearing, 12/16/16, at 15) (emphasis added). Read in context, the prosecutor was simply indicating he would not dispute Appellant's position that CYS cleared Appellant's brother **for purposes of argument** on the post-trial motion, where the Commonwealth insisted Appellant's **Brady** claim still failed on other grounds.

Additionally, to the extent Appellant complains the Commonwealth failed to disclose a 2012 letter indicating CYS closed a case against Appellant's brother involving the snakes, Appellant did not produce any letter from 2012 to substantiate that claim.

[7] Appellant testified at trial that CYS' letter was "somewhere in the house" but Appellant's brother could not locate it.

Appellant's mother or Appellant's brother; court addressed issue with CYS' agent, who informed court all available records had been produced; thus, it was appropriate for matter to proceed to trial at that juncture and for court to deny Appellant's request for continuance; **(issue 4)**[8] Appellant, Child, Appellant's brother, and Appellant's mother lived together at Appellant's mother's house; Appellant's brother was avid snake enthusiast and housed multiple venomous snakes, both legal and illegal in Pennsylvania; testimony from Fish and Boat Commission Officer indicated lids of snake aquariums were not secured properly and snakes could potentially escape their enclosures; additional testimony from Appellant and others confirmed that, on at least one occasion, one venomous snake escaped confinement during feeding, and Child was immediately removed from home; nevertheless, this incident highlights potential danger these snakes pose; Appellant further testified his daughter was instructed not to ever interact with snakes or

_____

[8] Appellant's claim that the Commonwealth failed to establish the "snake types and toxicity" is waived for failure to specify that contention in his court-ordered Rule 1925(b) statement. *See Commonwealth v. Hansley*, 24 A.3d 410 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (reiterating general rule that issues not raised in Rule 1925(b) statement are waived on appeal; concise statement must be specific enough for trial court to identify and address issues appellant wants to raise on appeal). Moreover, the Commonwealth presented testimony from multiple witnesses about the types of snakes Appellant's brother kept in the home, as well as testimony from the Chief Biologist for the Natural Diversity Section of the Pennsylvania Fish and Boat Commission discussing the toxicity of those types of snakes. Thus, even if Appellant had preserved this particular allegation, it would merit no relief.

enter room where they were housed, due to potential danger; Commonwealth presented evidence to prove Appellant was aware of his duty to protect Child and knew of potential danger posed by venomous snakes, sufficient to sustain Appellant's conviction for EWOC).[9]   Accordingly, we affirm on the basis of the trial court's opinions.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017

---

[9] The correct full citation for **Commonwealth v. Schley** (**see** Trial Court Opinion at 2), is 136 A.3d 511 (Pa.Super. 2016).

## IN THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :

    :    CP-44-CR-719-2015

v.    :

    :

AARON JOSHUA BOHN    :

### OPINION

AND NOW, this ___3rd___ day of February, 2017, this Opinion is in support of the

accompanying Order denying Defendant's Motion for Post-Trial Relief, Motion for Acquittal,

and/or Motion for New Trial, filed December 1, 2016.

### FACTUAL BACKGROUND

On November 23, 2015, Defendant was charged with knowingly endangering the welfare

of a child by violating a duty of care, protection, or support. Specifically, it was alleged that

Defendant did permit his daughter, age eleven, to be in close proximity to dangerous and

venomous snakes that were housed in containers which had either unsecured lids or no lids at all

and said child's bedroom was directly beside the room which held the snakes, in violation of

Section 4304A1 of the PA Crimes Code. These venomous snakes were owned by Defendant's

brother and co-Defendant, Zach VanSyoc, who also lived at the residence. Defendant was found

guilty of Endangering the Welfare of Children on November 14, 2016. Defendant subsequently

filed a Motion for Post-Trial Relief, Motion for Acquittal, and/or Motion for New Trial.

### DISCUSSION

A prosecutor has an obligation to disclose all exculpatory information material to the

guilt or punishment of an accused. *Commonwealth v. Roney*, 622 Pa. 1, 11, 79 A.3d 595, 600,

2013 Pa. LEXIS 2585, *1, 2013 WL 5827272 (Pa. 2013). This obligation extends to any

favorable evidence known to others acting on the government's behalf. *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). In order to establish a Brady violation has occurred, a defendant must show that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant. *Commonwealth v. Willis*, 616 Pa. 48, 60, 46 A.3d 648, 656, 2012 Pa. LEXIS 1265, *18-19, 2012 WL 1940334 (Pa. 2012). Evidence is material if there is a reasonable probability that, had said evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Commonwealth v. Willis*, 616 Pa. 48, 51, 46 A.3d 648, 650, 2012 Pa. LEXIS 1265, *1, 2012 WL 1940334 (Pa. 2012).

Defendant's Brady claim rests upon the discovery of a letter from Children and Youth Services dated August 4, 2015. The letter indicates that Zach VanSyoc, co-Defendant, had previously been investigated by the Agency as to the welfare of another child but that the case had been closed. Defendant contends this letter contains potentially exculpatory information relating to his case. Defendant further contends that the Commonwealth had a duty to discover and disclose this letter, as it was information known to another government agency, and that failure to discover and disclose said letter constitutes a Brady violation. Finally, Defendant raises separately a claim that he was prejudiced by statements made to prospective jurors during voir dire. We deal first with Defendant's assertion of the Brady violation.

On the morning of November 14, 2016, prior to the commencement of trial, Defendant filed a Motion to Compel Discovery as to all Children and Youth Services' materials, including information regarding earlier records and home visits involving the Defendant, his daughter,

and/or his two co-Defendants. The Commonwealth indicated at a hearing prior to the start of trial that it had complied with Defendant's Discovery request and had disclosed all relevant Children and Youth Services files. However, at trial, there was conflicting testimony from co-Defendants and Children and Youth Services as to whether the Agency had closed a previous investigation into Defendant's brother. Children and Youth claimed that no information existed within their files to show that visitations had taken place or that an investigation into Defendant's brother had been closed. Subsequently, at the December 16th hearing, Defendant submitted to this Court a copy of the August 4th letter and argued that the Commonwealth should have disclosed it in Pre-Trial Discovery.

In *Kyles v. Whitley*, the United States Supreme Court held that prosecutors have a duty to disclose evidence in the possession of other government agencies but limited this holding to agencies that are involved in the prosecution of the accused. Further case law clarified that this duty to disclose evidence within the prosecution's possession extends to law enforcement agencies. *Roney*, 622 at 608. However, it is less clear as to whether that duty extends to agencies of the government bringing the prosecution that are not law enforcement. It is the opinion of this Court that while Children and Youth Services may investigate allegations of child neglect or abuse and may report their findings to law enforcement when necessary, it is not a law enforcement agency. Nor is Children and Youth Services actively involved in the prosecution of the Defendant. As such, we do not believe the Commonwealth had a duty to discover and disclose evidence which was in the possession of Children and Youth at the time of Pre-Trial Discovery of which the Commonwealth was unaware.

Allowing for the sake of argument that the Commonwealth had a duty to investigate Children and Youth Services' files for unknown discoverable material, this Court still does not

believe there was a Brady violation for failing to disclose the August 4th letter. It is acknowledged that the Commonwealth excluded the evidence in question, albeit inadvertently, and that the evidence could have been used for impeachment purposes. However, We cannot agree that the evidence was material to the Defendant's guilt or innocence. Materiality requires more than a mere possibility that the undisclosed information might have helped the defense or affected the outcome of the trial. *Commonwealth v. Haskins*, 60 A.3d 538, 2012 Pa. Super. LEXIS 2940, 2012 PA Super 223, 2012 WL 4841446 (Pa. Super. Ct. 2012) and the Court is not convinced a reasonable probability exists that this evidence would have resulted in a different outcome of the Defendant's case.

First, the letter in question references a Children and Youth case number which relates to a different minor child, L.M., and not the minor child, V.B., central to this case. Second, the letter refers to a prior case involving a co-Defendant and not the Defendant himself. Third, the case number associated with the letter references a residence in Yeagertown and not the residence associated with Defendant's case. Finally, Children and Youth Services' records were expunged prior to the discovery of the letter in question. As a result, the circumstances that lead to the determination that the co-Defendant was not knowingly endangering the welfare of L.M. can only be arrived at through conjecture and speculation.

As a result, this Court does not know what the minor child's living arrangements were at the time the referral was deemed invalid. This Court cannot know what conditions prompted Children and Youth Services to decide there was an invalid referral and whether they differed substantially from the current situation. Therefore, it is this Court's opinion that the materiality of the letter and related records is speculative at best and is not sufficient to meet the standard espoused in *Willis*.

Additionally, this Court does not believe that the failure of the Commonwealth to preserve evidence relating to the co-Defendant amounted to a denial of due process of law. Failure to preserve potentially useful evidence does not amount to a denial of due process of law unless the defendant can show the prosecution acted in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 52, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). Defendant has presented no evidence which would indicate bad faith on the part of the Commonwealth in allowing the expungement of the information from Children and Youth Services. Rather, during the hearing for Defendant's Post-Trial Motion, the Court learned that the expungement of said information was carried out as part of a routine policy of Children and Youth. This policy dictates that information relating to referrals which have been investigated and deemed invalid must be deleted within 1 year and 120 days from the date of the invalid designation. Therefore, the Commonwealth did not deny the Defendant due process of law by unknowingly allowing Children and Youth to expunge records, relating to the co-Defendant, as part of its routine procedures following a determination that said records were invalid.

Another factor this Court must consider is whether the Defendant could have discovered the August 4th letter and corresponding Children and Youth case information on his own. There is no Brady violation when the appellant knew or, with reasonable diligence, could have uncovered the evidence in question. *Commonwealth v. Paddy*, 15 A.3d 431, 439, 609 Pa. 272, 287, 2011 Pa. LEXIS 686, *1 (Pa. 2011).

While the Court acknowledges the Commonwealth was unaware of the letter and failed to disclose its existence to the Defendant, it cannot say this automatically amounts to a Brady violation. On the day of trial, Defendant brought the existence of the letter in question to the attention of both this Court and the Commonwealth. Moreover, Defendant produced a copy of

said letter in his Motion for Post-Trial Relief. The letter had been in either his or his co-defendant's possession prior to trial. It is the opinion of this Court that Defendant's knowledge of the letter and ability to produce a copy shortly after trial shows this evidence would have been discoverable to Defendant through his own reasonable diligence had he chosen to act sooner. Defendant was charged with endangering the welfare of a child on November 23, 2015 and his trial took place on November 14, 2016. Defendant therefore had approximately 1 year in which to act on his knowledge that his co-Defendant's prior case had been closed by Children and Youth Services and to obtain the information before it was expunged.

For the aforementioned reasons, this Court holds that the Commonwealth's failure to discover and disclose the August 4th letter and any information related to said letter does not amount to a Brady violation. We now turn to Defendant's separate claim that he was prejudiced by statements made to prospective jurors during voir dire

First, Defendant claims that during voir dire, the Commonwealth made several references to "snakes", despite an agreement with Defendant to refrain from doing so, and inadvertently prejudiced the Defendant. After reviewing the record, this Court can find no reference to the word "snake" and/or "snakes" and must therefore conclude that such references were not made on record. Therefore, We cannot agree that there was any prejudicial effect during voir dire stemming from the use of this word or any variation thereof.

Second, Defendant contends that during voir dire, the Court referred to the existence of the two co-Defendants' cases. Specifically, Defendant argues that the Court inadvertently related to the jury that one of the co-Defendants had pleaded guilty to her charges. Defendant reasons that this information would allow potential jurors to infer that such substantial evidence existed

in this case as to persuade a co-Defendant to plead guilty and that the potential jurors may have inferred from that information that the Defendant was guilty as well.

Having reviewed the record, this Court did reference the existence of "two interconnected cases" relating to the Defendant's case. However, the Court cannot agree that this reference alone would prejudice potential jurors. We believe it speculative at best to assume that the jury pool was tainted by this admission and that, respectfully, such an assertion assumes knowledge of the criminal justice system that the average juror does not possess. Therefore, it is the opinion of this Court that prejudicial error did not occur during voir dire of the jury selection process.

BY THE COURT:

AARON L. GINGRICH
JUDGE

c:    Tami Fees, Esquire
      District Attorney
      File

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THIS DOCUMENT HAS
BEEN FILED IN THIS CASE.
PROTHONOTARY, MIFFLIN COUNTY, PA

DATE:

## IN THE COURT OF COMMON PLEAS OF MIFFLIN COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-44-CR-719-2015 |
| | : | |
| | : | OTN#: T7377648-2 |
| v. | : | |
| | : | |
| AARON JOSHUA BOHN | : | |
| Defendant | : | |

### Statement in Compliance with Pa. R.A.P. 1925

AND NOW, this _28th_ day of April, 2017, having reviewed the docket entries and Appellant's

Concise Statement of Matters Complained of On Appeal Pursuant to Pa. R.A.P. 1925 the court addresses

the issues raised by Appellant below.

In issue number one, Appellant asserts that the evidence produced against the Appellant by the

Commonwealth at his trial was insufficient to sustain the verdict of Endangering the Welfare of Children.

> The standard we apply in reviewing the *sufficiency of the evidence* is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth. v. Phillips*, 2014 PA Super 113 (Super. Ct. 2014).

Pursuant to 18 Pa. C.S. § 4304(a)(1), "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." As a specific intent crime, Endangering the Welfare of Children requires a "knowing violation of a duty of care" by the individual. *Commonwealth v. Schley*, 2016 PA Super 46, 136 A.3d 511, 513. The Superior Court of Pennsylvania has interpreted the intent element for Endangering the Welfare of Children to require that:

> (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

*Commonwealth v. Lynn*, 114 A.3d 796, 819 (Pa. 2015).

Here, the evidence viewed in the light most favorable to the Commonwealth establishes that the evidence produced was sufficient to sustain the verdict of Endangering the Welfare of Children. The Defendant and his daughter lived together at Defendant's Mother's house. Defendant's brother also lived at this residence. Defendant's brother was an avid snake enthusiast and housed multiple venomous snakes, both legal and illegal in the State of Pennsylvania, at this residence. Testimony presented by a responding Pennsylvania Fish and Boat Commission Officer indicated that the lids of the snake aquariums were not properly secured and there existed the potential for the snakes to escape their enclosures. Additional testimony by Defendant and Co-Defendants indicated that on at least one occasion, one of the venomous snakes managed to escape confinement during a scheduled feeding. While Defendant's daughter was immediately removed from the home at this time, the incident highlights the potential danger that the animals posed. Defendant further testified that his daughter was instructed that under no circumstances was she to ever interact with the snakes, or even to enter the room where they were housed, due to the danger they posed.

Therefore, this Court believes there was sufficient evidence to find the specific intent element was satisfied in the present case. It is clear that Defendant was aware of his duty to protect his daughter and that Defendant was aware of the potential danger posed by the venomous snakes to his daughter's well-being as she was under strict instructions from Defendant not to interact with the snakes and was immediately removed from the home when the aforementioned escape occurred. Given Defendant's appreciation of the danger posed by the snakes, there was sufficient evidence to interpret Defendant's decision to allow his daughter to continue to reside in such close proximity to the venomous snakes as a failure to take action reasonably expected to protect her welfare.

In issue number two, Appellant first asserts that the Trial Court erred as a matter of law in ruling that the Commonwealth complied with Defendant's Request for Discovery. This Court believes this issue to be fully supported in its Opinion dated February 3, 2017, and its Order dated February 3, 2017, and respectfully requests the Superior Court of Pennsylvania refer to said Opinion and Order for this issue.

In issue number two, Appellant also asserts that the Trial Court erred as a matter of law in failing to order a continuance of the trial to provide additional time for the Commonwealth to explore Children and Youth Services' records for any additionally discoverable material. This Court believes its decision to proceed with the trial was appropriate given the circumstances. Counsel for Defendant filed the Request for Discovery on the morning of November 14, 2016, the date of Defendant's trial. Despite the short notice, this Court did address the issue with an agent of Children and Youth Services. The agent, after reviewing the files on hand and after speaking with additional staff in the office of Children and Youth Services, informed the Court that all available records pertaining to the Defendant had been produced and presented. Having been assured that all available records had already been given to Defendant during Discovery, this Court made the decision to proceed to trial.

This Court believes issue number three raised by Defendant on appeal to be fully supported in its Opinion dated February 3, 2017, and its Order dated February 3, 2017, this Court respectfully requests the Superior Court of Pennsylvania refer to said Opinion and Order for this issue.

BY THE COURT:

AARON L. GINGRICH
JUDGE

c:    Brian Manchester, Esquire
District Attorney
File